Josephine Louise LADD *v.* Lon H. LADD, Sr.

78-142                                    580 S.W. 2d 696

Opinion delivered May 14, 1979
(In Banc)

*Kincaid, Horne & Trambo,* for appellant.

*Charles E. Hanks* and *Pearson & Pearson,* by: *Thomas Pearson,* for appellee.

FRANK HOLT, Justice. Appellant and appellee were married on September 11, 1961, in New Mexico and lived there as husband and wife until May, 1976, when they moved to Arkansas. About a year later, appellee filed for divorce and appellant counterclaimed. Appellee was granted a divorce on the ground of appellant's habitual drunkenness. Her counterclaim was dismissed. All jointly owned Arkansas property was ordered sold and the proceeds divided between the parties. Appellant was awarded certain items of personalty as her separate property. She was denied any interest in other property allegedly acquired by the parties during their marriage in which she claimed ½ interest as community property. The court declined to rule on the parties' respective interests in a $90,000 promissory note secured by a real estate mortgage on New Mexico property on the ground that it had no jurisdiction to decide title to foreign property. Appellee was ordered to pay appellant $500 per month alimony and her current medical and hospital bills. For reversal appellant asserts that the court erred in failing to award her ½ interest in the promissory note, ½ interest in items of personal property which were community property when removed from New Mexico to Arkansas, and a ½ interest in property purchased with community funds by appellee in Arkansas. Appellee cross-appeals asserting that the court erred in awarding alimony to appellant.

Pursuant to Ark. Stat. Ann. § 27-2139 (Repl. 1962), appellee has filed a motion with this court seeking dismissal of appellant's appeal with respect to the ownership of the $90,000 note, payable on its face to appellee and appellant, which is secured by New Mexico property and held by a New Mexico bank for collection. Appellee's motion is based upon the ground that appellant has, subsequent to this appeal, instigated an action in a New Mexico court to recover her alleged interest in the note, and therefore this constitutes an abandonment of her appeal. Appellant responds that the New Mexico action was initiated because appellee had asserted complete ownership of the note to the escrow bank, that the bank had contacted appellant's attorneys requesting that legal action be taken so they would not have to decide ownership, and that the action taken was done to protect her proprietary rights in the note and was not intended to affect or abandon her appeal to this court. The New Mexico trial court's order directed that all proceeds on the note, not to exceed $1,000 per month, be distributed to appellee and, should a court of competent jurisdiction adjudge appellant is entitled to ½ of the proceeds, the bank shall provide for a recoupment. The order recognized the pendency of the appeal here.

Appellee cites 4 Am. Jur. 2d, Appeal and Error § 264:

There is considerable authority that a party against whom an adverse judgment has been rendered and who, pending an appeal therefrom, prosecutes another action based upon the same cause and involving the same parties and issues, will be held to have waived or abandoned his right of appeal.

However none of the cases cited there deal with the exact situation presented here. Our few cases dealing with abandonment of appeal have involved cases which had been prosecuted to judgment in other courts. See *Church* v. *Gallic*, 76 Ark. 423, 88 S.W. 979 (1905); and *Pillow* v. *King*, 55 Ark. 633, 18 S.W. 764 (1892). Here it does not appear that the injunctive proceeding in the New Mexico court was prosecuted to a final judgment. To the contrary, it appears the proceeding was stayed pending disposition of the appeal here. The court's order, in effect, merely provided for a continued collection of the note by the escrow bank with

payments to appellee and recoupment for appellant for any excess payments collected by the appellee in the event a court of competent jurisdiction, as here, adjudges appellant is entitled to ½ interest in the proceeds of the note. In the circumstances, we hold that the appellant, by her New Mexico proceeding, has not waived or abandoned her right to appeal with respect to this note. Accordingly, appellee's motion to dismiss the appeal is denied.

We now turn to appellant's first contention which is that the court erred in finding that it did not have jurisdiction to decide title to the promissory note secured by the mortgage on the New Mexico property. We agree. The note is personalty and, the parties being within the jurisdiction of the court, may have title to it adjudicated by an Arkansas court. *Bell* v. *Wadley*, 206 Ark. 569, 177 S.W. 2d 403 (1944). Here it appears uncontradicted that, early in their marriage, appellee's separate funds were used by him to purchase a motel. Thereafter the motel was sold by him resulting in the promissory note in dispute. It is argued by appellant, however, that since the note on its face is payable to both appellant and appellee, it is therefore jointly owned and she should be entitled to a ½ interest. We disagree. Under New Mexico law, which is applicable here, property acquired after marriage by a spouse in exchange for his or her property owned prior to marriage remains the separate property of that spouse unless transmutation into community property is shown by clear, strong, and convincing evidence. *Burlingham* v. *Burlingham*, 384 P. 2d 699 (N.M. 1963). Here, as indicated, it is uncontradicted that the source funds for the purchase of the motel were appellee's separate property. Consequently, appellant's evidence is insufficient to meet New Mexico's requirements on the theory of transmutation. Therefore appellee is entitled to the entire interest in the promissory note.

We next consider appellant's contention that certain personalty is community property and, therefore, the court erred in failing to award her ½ interest in those items which were removed to Arkansas. Appellee responds that the contested property is separately owned by him pursuant to a reconciliation agreement signed by the parties in New Mex-

ico. It is true that parties may, by written agreement, provide that property, which would otherwise be community property, is separate property. § 40-3-8, N.M.S.A., 1978. (§57-4A-2, N.M.S.A., 1953). Here the agreement provided that it is the parties' desire to make a complete and final settlement of all their property rights now owned by them and property which they might hereafter acquire by either of them; that each of them is fully and completely informed of the financial and personal status of the other and had given mature thought to the agreement and its obligations; that they understand the agreement and its obligations and "the agreement is in full satisfaction of all obligations which each of said parties now has or might hereafter, or otherwise, have, toward the other;" and their present separation is the result of "her activities and her desire." The agreement further provided that the appellant agrees to transfer certain shares of stock to appellee, her interest in their Albuquerque home with an equity of approximately $18,000, and all the furniture and fixtures in the home. Appellee agreed to transfer to appellant a 1957 Facel Vega automobile, $5,000 in jewelry which had been given to the appellant by the appellee, her personal effects, an oil painting, and a silver service. The agreement also provided that all property acquired by either of them subsequent to the date of the agreement would be the separate property of the party acquiring the same and the agreement could be "incorporated in any decree which may hereafter be obtained by either party." The chancellor found that the agreement did not bear upon nor was decisive of the issues in the case. However, appellee invokes this agreement as controlling their property rights and contends that the property now sought by appellant is his separate property. Appellant argues that the agreement is void because of fraud, duress, undue influence, and a violation of public policy.

The validity of the contract is determined by the place in which it was made. *Simpson* v. *Weatherman,* 216 Ark. 684, 227 S.W. 2d 148 (1950). Although New Mexico does not seem to have dealt with the validity of a reconciliation agreement, it has ruled on the validity of property agreements in contemplation of divorce. We deem that law applicable in this situation. The leading case appears to be *Beals* v. *Ares,* 185 P. 780 (N.M. (1919), which holds that when the husband was the manager of the community property, as it appears here,

and the wife did not have any knowledge of the assets, the husband had the burden of proving that the agreement concerning property rights was fair since the parties held the positions of trustee and beneficiary. The court stated that (1) the transaction was presumably fraudulent, and (2) a duty devolved upon the husband to show (a) a payment of adequate consideration for the transfer of the wife's property, (b) full disclosure, and (c) that the wife had independent and competent counsel. See also *Unser* v. *Unser,* 526 P. 2d 790 (N.M. 1974); and *Trujillo* v. *Padilla,* 442 P. 2d 203 (N.M. 1968).

Here, according to appellee, appellant did not know the details of his financial holdings or business affairs. The agreement left her "out in the cold." The reconciliation was conditioned upon the agreement, which was drafted by his attorney, and she could "take it or leave it." He would have filed for a divorce if she had not signed the agreement. According to the appellant, she was not familiar with appellee's assets at the time of the agreement; she had no source of income other than him; she signed the agreement because of her desire to effect a reconciliation after a three weeks' separation; and she did not take the agreement to an attorney and signed it the day she read it. In the circumstances, we hold that the appellee has not met his burden of proof required by *Beals, supra, Unser, supra,* and *Trujillo, supra,* to establish that the agreement settling their property rights was fair and equitable. Additionally, we think the contract was unconscionable and contrary to public policy. Paragraph 1 of the agreement provides that "each party understands that the agreements and obligations assumed by the other are assumed with the express understanding and agreement that they are in full satisfaction of all obligations which each of said parties now has or might hereafter, or otherwise have, toward the other." The effect of this provision is to relieve appellee of any marital obligations of support during the continuance of the marriage and, as such, is void as against public policy. See *Towles* v. *Towles,* 182 S.E. 2d 53 (S.C. 1971).

Having found that the agreement interposed by appellee as controlling their property rights is invalid and unenforceable, we now consider appellant's contention that the

court erred in failing to award her ½ interest in certain property acquired during their marriage and domicile in New Mexico and then removed to Arkansas. Specific items in which she claims ½ interest include a $4,000 Jaguar, a large quantity of jewelry valued by appellee at $29,650 (this does not include $5,280 worth of jewelry which the court awarded to appellant on the basis it was a gift from appellee), and 7 Corvairs valued at $1,250. It is undisputed that these items were acquired in New Mexico during their marraige and domicile there. Therefore New Mexico law is applicable in determining the ownership of these movable personalty items. Leflar, American Conflicts Law, §233. Property acquired in New Mexico during their marriage and domicile there by either party is presumed to be community property. § 40-3-12, N.M.S.A., 1978 (previously codified as § 574A-6, N.M.S.A., 1953). This presumption may be rebutted by a showing of separateness by a preponderance of the evidence. *Burlingham* v. *Burlingham, supra.* No evidence was presented to rebut the presumption of community property as to these recited items other than the 1965 property agreement. Since the 1965 agreement is unenforceable, appellant is entitled to a ½ interest in the cars and jewelry, which is $17,450.

Appellant also claims a ½ interest in certain property acquired by appellee in his name when the parties moved to Arkansas inasmuch as the funds used for the purchases were derived from the sale or conversion of community property in New Mexico. Upon the parties moving to Arkansas, appellee purchased certain property in his own name. The specific items in which appellant claims a ½ interest are: a tract of land valued at $32,000, appellee's interest in a liquor store valued at $26,000, a trailer home valued at $5,000, and 2 fire trucks valued at $5,000. The appellee himself testified that these properties were acquired in his name in Arkansas by using funds derived from liquidation of assets acquired during their marriage and domicile in New Mexico. The funds expended were derived from the cashing of 2 certificates of deposit totaling $60,000 and the sale of a boat for $38,000.

Appellant argues that the New Mexico assets were community property and under the "source" doctrine, her interest in the newly acquired property remains the same as that held in the exchanged property. Every state agrees with

this doctrine, at least to the extent that the parties are viewed as retaining the same equitable title. Leflar, supra, § 233. The "source" doctrine originated in the case of *Depas* v. *Mayo*, 11 Mo. 314 (1848). See also *Tomaier* v. *Tomaier*, 146 P. 2d 905 (Cal. 1944). In *Depas* the parties were domiciled in Louisiana where funds were acquired as community property. The parties moved to Missouri where the husband purchased property in his name with funds acquired by them in Louisiana. Appellee argues that *Depas* is not applicable as it was admitted there that the wife was entitled to ½ of the money which was used to purchase the Missouri property. We do not think the distinction important. Here it appears undisputed that the property used to purchase the Arkansas property was obtained from the sale or conversion of property acquired during their marriage and domicile in New Mexico. As previously discussed, the presumption is that all property acquired there during marriage and domicile is community property and the burden is upon appellee to show otherwise.

Appellee stated that the majority of the money used to purchase the certificates of deposit, in his name with appellee as survivor and later cashed by him, was from funds obtained as reimbursement of money that he had put into a family owned corporation during the marriage. This evidence does not suffice to overcome the presumption of community property as there was no evidence that the funds put into the company originally were not community property. Neither was there any evidence showing that the boat was not community property. Appellee again relies upon the 1965 property settlement as controlling. As indicated, it is invalid and unenforceable. Accordingly, we hold that appellant is entitled to a ½ interest in the recited specific items purchased by appellee in this state with funds acquired from the New Mexico property; i.e., the tract of land, the liquor store, the trailer home, and 2 fire trucks, which is $34,000.

Finally, appellee contends that the court abused its discretion in awarding alimony to appellant. He admits, however, that the court could award alimony even though the divorce was awarded to the husband for the fault of the wife. *Walker* v. *Walker*, 248 Ark. 93, 450 S.W. 2d 1 (1970); and *Lewis* v. *Lewis*, 255 Ark. 583, 502 S.W. 2d 505 (1973). Even so, here appellee argues that since the divorce was awarded to

him for appellant's habitual drunkenness and without a finding of fault on his part, the $500 per month award was without merit. The parties were married for approximately 15 years during which time appellant helped rear appellee's two sons. It appears that appellant was in good health at the time of their marriage in 1961 and at his request discontinued her employment. He was a manufacturer's representative, which required considerable traveling and entertainment of his prospective customers. Drinking was a part of the entertainment. Appellant accompanied him and a drinking problem resulted after about 4 years. After a 3 weeks' separation, a reconciliation was effected as previously discussed. When they moved to Arkansas, she had free access to the liquor store in which appellee had purchased an interest. Within a year, the present litigation ensued. By this time, appellant's drinking problem had become acute requiring a short period of hospitalization. She is also suffering from a progressive heart disease. Her health does not permit her to work. She has no assets other than some jewelry and some household furnishings. Her only income upon their separation was the alimony paid by appellee. According to appellee's balance sheet, he has a new worth of $121,000 and his family owned corporation has retained earnings of $130,-000. As indicated the court awarded $500 a month alimony. However, in view of our modification of the decree as regards their respective property rights, we think $350 alimony at the present is amply sufficient.

Affirmed in part, reversed in part and remanded for entry of a decree not inconsistent with this opinion.

Byrd, J., dissents.